UNITED STATES, Appellee,

v.

Terence T. FRAZIER, Private,
U.S. Army, Appellant.

No. 65,193.
CM 8902170.

U.S. Court of Military Appeals.

Argued Nov. 12, 1991.

Decided March 11, 1992.

For Appellant: *Captain Pamela J. Dominisse* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Timothy P. Riley* (on brief); *Captain Timothy M. Lawlor.*

For Appellee: *Captain Timothy W. Lucas* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion*

COX, Judge:

Appellant was tried by a military judge sitting alone as a general court-martial. Contrary to his pleas, he was convicted of

making a false official statement; destroying private property (valued at less than $100.00); larceny of $586.00; and unauthorized absence (23 days). *See* Arts. 107, 109, 121, and 86, Uniform Code of Military Justice, 10 USC §§ 907, 909, 921, and 886, respectively. He was sentenced to a dishonorable discharge, 3 years' confinement, and total forfeitures. The convening authority approved the adjudged sentence, and the Court of Military Review affirmed the findings and sentence in a short-form decision (June 29, 1990).

This Court granted review of the following issues:

## I

WHETHER APPELLANT'S WALLET SHOULD HAVE BEEN SUPPRESSED DUE TO A VIOLATION OF UNIFORM CODE OF MILITARY JUSTICE ARTICLE 31.

## II

WHETHER THE SEARCH OF APPELLANT'S WALLET VIOLATED THE FOURTH AMENDMENT.

## III

WHETHER THE MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION FOR A FINDING OF NOT GUILTY OF CHARGE I (FALSE OFFICIAL STATEMENT) WHERE APPELLANT WAS A SUSPECT AT THE TIME HE MADE THE FALSE STATEMENT BECAUSE THE MILITARY JUDGE ERRONEOUSLY RELIED ON *UNITED STATES v. PRATER*, 28 MJ 818 (ACMR 1989), SUBSEQUENTLY VACATED BY THE ARMY COURT OF MILITARY REVIEW.

We decide all issues adversely to appellant.

## FACTS

Frazier shared a barracks room with three other servicemembers. One of those roommates was Specialist Umbarger. In March 1989, Umbarger returned from the field and found his wall locker open. The lock securing the locker was missing, and the money that had been left in the locker was gone. Umbarger left the room and alerted the rear detachment noncommissioned officer-in-charge (NCOIC), Sergeant Floyd. The two returned to the room. Frazier, who was in his bunk and asleep during this commotion, was slow to wake up after Floyd and Umbarger returned. His sleepiness was attributed to a night of drinking.

Floyd asked Frazier whether he had taken the money, and Frazier denied having done so. Floyd then asked to see Frazier's wallet, and Frazier responded by looking for the keys to his locker where the wallet was kept.

The military police had been notified and arrived at the room. Floyd advised the military police that he had asked Frazier for his wallet. By this time, Frazier had found the keys to his locker, retrieved his wallet, and handed it to Floyd. Floyd looked in the wallet and saw many large bills approximating the amount of money lost by Umbarger. Floyd displayed the wallet's content to the military police and attempted to deliver the wallet to them. The military police refused delivery from Floyd, so he returned the wallet to Frazier. With the wallet again in Frazier's possession, the military police asked to see the wallet, and Frazier consented. They examined the wallet, saw the amount of money inside, and handed it back to Frazier. During this encounter neither Floyd nor the military police officers ever advised appellant of his rights under Article 31, UCMJ, 10 USC § 831.

At this point, Umbarger, Floyd, and Frazier were taken to the military police station. At the station, Frazier was advised for the first time of his Article 31 rights. Thereafter, he waived his rights, including the right to counsel, and agreed to be questioned. He also turned over his wallet and its contents upon request. Under questioning by a military police investigator, Frazier denied taking any money. He explained that the money in the wallet was from a postal money order sent to him by his

mother; however, upon further investigation by the military police, his story proved false. Appellant ultimately recanted his first story and said he obtained the money through illegal means, but he would not disclose what those "means" were. The money was then confiscated.

## I

### MOTION TO SUPPRESS

Prior to trial, Frazier's defense counsel filed a motion "to suppress the results of the search" of the "wallet and locker, and any descriptive statements made by" Frazier. Defense counsel also argued that any consent given by Frazier was involuntary.* The military judge decided to postpone his ruling until the evidence was presented at trial. Because this was a trial by military judge alone, he reasoned that defense counsel's objections would be treated as objections to evidence.

At trial, the Government sought admission of the money found in Frazier's wallet and a military police evidence/property custody document. Defense counsel objected on the basis that the evidence was obtained in an unlawful search and seizure.

The Government relied on Mil.R.Evid. 314(e), Manual for Courts–Martial, United States, 1984, and asserted admissibility because the search was consensual. They argued that Frazier voluntarily consented to the search and, in support, listed the following factors: He was 26 years old; he possessed average intelligence (having the equivalent of a high school education); he was aware of what went on while he answered questions; he willingly handed over the wallet; the request of the NCOIC to search the wallet was in a normal tone, in the form of a question and not an order; so, therefore, there was no interrogation of the accused at this point.

Upon consideration of the evidence, the military judge ruled that Frazier had voluntarily given his sergeant the wallet, so any derivative evidence was admissible.

 The Fourth Amendment to the Constitution of the United States protects an individual from unreasonable searches and seizures by agents of the Government. This protection generally applies to servicemembers. *United States v. Ezell*, 6 MJ 307 (CMA 1979). However, government agents may request a servicemember's consent to conduct a search; and when valid consent is given, a constitutionally reasonable search may take place. *United States v. Roa*, 24 MJ 297, 298 (CMA 1987); *see also United States v. McClain*, 31 MJ 130 (CMA 1990). A request for a consent to search does not infringe upon Article 31 or Fifth Amendment safeguards against self-incrimination because such requests are not interrogations and the consent given is ordinarily not a statement. *United States v. McClain, supra; United States v. Spivey*, 10 MJ 7, 10 (CMA 1980) (Everett, C.J., concurring in the result); *United States v. Morris*, 1 MJ 352, 354 (CMA 1976); *United States v. Insani*, 10 USCMA 519, 28 CMR 85 (1959). Whether consent to a search is valid is measured by whether the consent was freely and voluntarily given as determined by the "totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. McClain* and *United States v. Roa*, both *supra.*

 There were actually three separate searches of the wallet. As to the first search, the military judge concluded that Frazier voluntarily gave the wallet to Sergeant Floyd and that there was no coercion on Floyd's part to have him do so. Secondly, Frazier also consented to the request of the two military police officers to look into

---

* We note that appellant did not contend at trial that his identification of his locker or his wallet amounted to violations of his privilege against self-incrimination. *See United States v. Roa*, 24 MJ 297, 302 (CMA 1987) (Everett, C.J., concurring in the result). Rather, appellant contended at trial that it was the manner in which Sergeant Floyd had obtained his consent—without having advised him of his rights—that gives rise to the first issue. In any event, it is unlikely that appellant's actions resulted in the identification of his locker, because it was certainly well known to Umbarger, his roommate.

the wallet. In both instances, the wallet was returned to Frazier, and no seizure was made. We hold that the military judge did not err in concluding that both of these observations of the contents of the wallet were lawful searches.

■ Because we have not found error in the first two searches, we cannot condemn the third search, which took place at the military police station. The delivery of the wallet by Frazier to the military police investigator was voluntary. Indeed, by this time, Frazier had been advised of his rights, had declined counsel, and had agreed to answer questions. Under the totality of these circumstances, we are convinced that appellant's consent to the search of his wallet was freely and voluntarily given. *Schneckloth v. Bustamonte, supra.*

## II

■ Appellant also submits he was erroneously convicted of making a false official statement under Article 107. He argues that he was a suspect at the time the statement was made and therefore did not have an independent duty to account. However, Frazier was warned of his rights, and therefore his duty to respond truthfully to the investigator is "sufficient to impute officiality to his statements for purposes of Article 107." *United States v. Prater*, 32 MJ 433, 438 (CMA 1991); *see*

*United States v. Jackson*, 26 MJ 377, 379 (CMA 1988).

The decision of the United States Army Court of Military Review is affirmed.

Judges CRAWFORD, GIERKE, WISS, and Senior Judge EVERETT did not participate.

SULLIVAN, Chief Judge (concurring in the result):

The military judge properly found that appellant was a suspect in the larceny of Specialist Umbarger's money prior to his questioning by Sergeant Floyd. Thus, Sergeant Floyd's questioning of appellant about this offense prior to a proper rights advisement under Article 31, Uniform Code of Military Justice, 10 USC § 831, was unlawful. *United States v. Loukas*, 29 MJ 385 (CMA 1990). *Cf. United States v. Britton*, 33 MJ 238, 239 (CMA 1991). Moreover, this violation of Article 31 was a factor to be considered in determining the voluntariness of appellant's later consent to search. *See generally United States v. Phillips*, 32 MJ 76, 80 (CMA 1991). Considering the non-incriminating non-coerced nature of these responses, however, I join my Brother, Judge Cox, in holding, based on all the circumstances of this case, that appellant's consent to search was voluntary. *See United States v. Burns*, 33 MJ 316, 322 (CMA 1991) (Sullivan, C.J., concurring separately).