Judge ERDMANN
delivered the opinion of the court.
Contrary to his pleas, Sergeant Lawrence G. Hutchins III was convicted by members at a general court-martial of making a false official statement, unpremeditated murder, larceny, and conspiracy to commit larceny, false official statements, murder, and obstruction of justice in violation of Articles 107, 118, 121, and 81, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 918, 921, 881 (2006).[1] The members sentenced Hutchins to reduction to E-l, confinement for fifteen years, dishonorable discharge, and a reprimand. The convening authority approved a sentence of reduction to E-l, confinement for eleven years, and a dishonorable discharge.
The United States Navy-Marine Corps Court of Criminal Appeals (CCA) concluded that the military judge had improperly severed the attorney-client relationship with one of Hutchins’s defense counsel, set aside the findings and sentence, and authorized a rehearing. United States v. Hutchins, 68 M.J. 623, 624, 631 (N.-M.Ct.Crim.App.2010). The Judge Advocate General of the Navy certified the issue involving the termination of the attorney-client relationship to this court pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2006). We reversed the CCA decision holding that while the attorney-client relationship had been improperly severed, Hutchins was not prejudiced. United States v. Hutchins, 69 M.J. 282, 293 (C.A.A.F.2011). We returned the record of trial to the Judge Advocate General of the Navy for remand to the CCA for further review pursuant to Article 66(c), UCMJ. Id. Upon further review, the CCA affirmed the findings and the sentence as approved by the convening authority. United States v. Hutchins, No. NMCCA 200800393, 2012 CCA LEXIS 93, at *32, 2012 WL 933067, at *12 (N.-M.Ct.Crim.App. Mar. 20, 2012) (unpublished).
We granted review to determine whether Hutchins’s post-trial rights were influenced by unlawful command influence and whether the military judge erred when he denied the defense motion to suppress Hutchins’s statement made to the Naval Criminal Investigative Service (NCIS) after having invoked his right to counsel.[2] We hold that the NCIS *296 request to Hutchins for his consent to search his belongings reinitiated communication with Hutchins in violation of his Fifth Amendment rights as interpreted by the Supreme Court in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). We therefore reverse the decision of the CCA, set aside the findings and the sentence, and return the case to the Judge Advocate General of the Navy.[3]

Factual Background

The charges against Hutchins arose from an incident that occurred in April 2006 while Hutchins was a squad leader in Iraq and his unit was conducting counterinsurgency operations. The CCA summarized the facts of the offenses as follows:
The appellant was assigned as squad leader for 1st Squad, 2nd Platoon, Kilo Company, 3rd Battalion, 5th Marines, assigned to Task Force Chromite, conducting counterinsurgency operations in the Hamdaniyah area of Iraq in April 2006. In the evening hours of 25 April 2006, the appellant led a combat patrol to conduct a deliberate ambush aimed at interdicting insurgent emplacement of improvised explosive devices (IEDs). The court-martial received testimony from several members of the squad that indicated the intended ambush mission morphed into a conspiracy to deliberately capture and kill a high value individual (HVI), believed to be a leader of the insurgency. The witnesses gave varying testimony as to the depth of their understanding of alternative targets, such as family members of the HVI or another random military-aged Iraqi male.
Considerable effort and preparation went into the execution of this conspiracy. Tasks were accomplished by various Marines and their eorpsman, including the theft of a shovel and AK-47 from an Iraqi dwelling to be used as props to manufacture a scene where it appeared that an armed insurgent was digging to emplace an IED. Some squad members advanced to the ambush site while others captured an unknown Iraqi man, bound and gagged him, and brought him to the would-be IED emplacement.
The stage set, the squad informed higher headquarters by radio that they had come upon an insurgent planting an IED and received approval to engage. The squad opened fire, mortally wounding the man. The appellant approached the victim and fired multiple rifle rounds into the man’s face at point blank range.
The scene was then manipulated to appear consistent with the insurgent/IED story. The squad removed the bindings from the victim’s hands and feet and positioned the victim’s body with the shovel and AK-47 rifle they had stolen from local Iraqis. To simulate that the victim fired on the squad, the Marines fired the AK-47 rifle into the air and collected the discharged casings. When questioned about the action, the appellant, like other members of the squad, made false official statements, describing the situation as a legitimate ambush and a “good shoot.” The death was brought to the appellant’s battalion commander’s attention by a local sheikh and the ensuing investigation led to the ease before us.
2012 CCA LEXIS 93, at *4-*6, 2012 WL 933067 at *2 (paragraph formatting added).
On May 11, 2006, NCIS initiated an interrogation of Hutchins after advising him of his rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2006). Following Hutch-ins’s invocation of his right to an attorney, NCIS properly terminated the interrogation. At that point Hutchins was confined to a *297 trailer under guard where he was held essentially in solitary confinement and was not allowed to use a phone or to otherwise contact an attorney. The Government conceded that these conditions were restriction tantamount to confinement. However, despite the requirements of Military Rule of Evidence (M.R.E.) 305(d)(2) and Rule for Courts-Martial (R.C.M.) 305(f), the Government made no effort to secure an attorney for Hutchins during this period.
After a week of confinement under these conditions, on May 18, 2006, the same NCIS investigator who had interrogated Hutchins on May 11 entered his trailer in the late evening and asked for permission to search his personal belongings. The investigator provided Hutchins with a Permissive Authorization for Search and Seizure form which reminded him that he was still under investigation for conspiracy, murder, assault, and kidnapping. While reading this form, Hutch-ins asked if the door was still open to give his side of the story. Hutchins consented to the search and signed the form.
The investigator informed Hutchins that he could talk to them but not that night.[4] The next morning Hutchins was taken to NCIS where he was readvised of his Article 31 rights. Hutchins waived his rights, was interrogated, and subsequently provided a detailed written confession.

Discussion

Introduction:

The Government argues that this case is governed by the holding in United States v. Frazier, 34 M.J. 135, 137 (C.M.A.1992), that “[a] request for consent to search does not infringe upon Article 31 or Fifth Amendment safeguards against self-incrimination because such requests are not interrogations and the consent given is ordinarily not a statement.” We do not take issue with that basic principle and agree that the NCIS request to search Hutchins’s personal belongings on May 18 was not an interrogation. The principle set forth in Frazier, however, does not end our inquiry. Once Hutchins requested an attorney, under Edwards he could not be further interrogated unless: (1) counsel had been made available; or, (2) Hutchins reinitiated further “communication, exchanges, or conversations.” Edwards, 451 U.S. at 484-85, 101 S.Ct. 1880. As no attorney was made available to Hutchins, the Edwards inquiry in this case centers on whether, under the circumstances of this case, it was the Government or Hutchins that reinitiated further communication under Edwards and Bradshaw.
Edwards and Bradshaw — Reinitiation of the Communication:
Since the Supreme Court’s decision in Edwards in 1981, it has been clear that:
[A]n accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
Edwards, 451 U.S. at 484-85, 101 S.Ct. 1880 (emphasis added).
There is no disagreement between the parties that Edwards applies to the circumstances of this case. However, the parties differ as to whether NCIS or Hutchins initiated further “communication, exchanges, or conversations.” Hutchins argues that the request for consent to search was an initiation of further communication by NCIS in violation of Edwards because it was directly related to the criminal investigation and was not merely incidental to the custodial relationship, citing Bradshaw, 462 U.S. at 1044, 103 S.Ct. 2830. The Government responds that, under Frazier, the request for consent to search is not an interrogation and therefore such a request did not initiate further “interrogation” as proscribed by Edwards.
The fundamental purpose of the judicially crafted rule in Edwards is to “[p]re-serv[e] the integrity of an accused’s choice to *298 communicate with police only through counsel.” Patterson v. Illinois, 487 U.S. 285, 291, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). The need for such a rule is to provide added protection against the coercive pressures of continuous custody after an individual has invoked his right to counsel, because he is “cut off from his normal life and companions, thrust into and isolated in an unfamiliar, police-dominated atmosphere, where his captors appear to control his fate.”[5] Maryland v. Shatzer, 559 U.S. 98, 106, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010) (citations omitted) (internal quotation marks and brackets omitted).
The Court in Oregon v. Bradshaw stated:
[The test in Edwards ] was in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers ... [and we] restated the requirement in Wyrick v. Fields, 459 U.S. 42, 46 [103 S.Ct. 394, 74 L.Ed.2d 214] (1982) (per curiam), to be that before a suspect in custody can be subjected to further interrogation after he requests an attorney there must be a showing that the “suspect himself initiates dialogue with the authorities.”
Bradshaw, 462 U.S. at 1044, 103 S.Ct. 2830.
Not all communications initiated by an accused or law enforcement will trigger the protections under Edwards.[6] The Court in Bradshaw went on to distinguish between inquiries or statements by either a police officer or a defendant that represented a desire to open a more “generalized discussion relating directly or indirectly to the investigation” and those “inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship.” Id. at 1045, 103 S.Ct. 2830. The former circumstance constitutes a reinitiation of communication while the latter circumstance does not. The Edwards rule does not merely prohibit further interrogation without the benefit of counsel, it prohibits further “communication, exchanges, or conversations” that may (and in this case, did) lead to further interrogation. 451 U.S. at 485, 101 S.Ct. 1880. Under Bradshaw, the issue before this court is whether the NCIS agent opened a more “generalized discussion relating directly or indirectly to the investigation” or whether his inquiry related to “routine incidents of the custodial relationship.” 462 U.S. at 1045, 103 S.Ct. 2830.
The NCIS investigator was forthright in his testimony that he initiated contact with Hutchins on May 18 to further the investigation.[7] The investigator testified that he requested permission to search Hutchins’s personal belongings that he had brought from Abu Ghraib to look for any media that could contain photographs. In connection with this request Hutchins was provided a permissive search authorization to sign. Importantly, the search authorization again reminded Hutchins that he was under investigation for conspiracy, murder, assault, and kidnapping. Its purpose was to seek Hutchins’s cooperation in the ongoing investigation by providing his consent to a search of his belongings. The investigator testified that it was while Hutchins was reading that form that he *299 asked if there was still an opportunity to talk to NCIS and give his side of the story. This request for consent to search by the NCIS initiated a generalized discussion which related directly to the ongoing investigation as contrasted to a bare inquiry about routine incidents of Hutchins’s custody.[8]
Frazier — A Request to Search is Not an Interrogation:
The Government’s reliance on the holding in Frazier is misplaced in this situation. Frazier stands for the proposition that a request for consent to search does not “infringe upon Article 31 or Fifth Amendment safeguards against self-incrimination because such requests are not interrogations and the consent given is ordinarily not a statement.” Frazier, 34 M.J. at 137. Frazier, however, did not involve or address the reinitiation of communications by law enforcement after an accused has invoked his right to counsel and cannot be held to modify or nullify the protections established by Edwards and Bradshaw.[9]

Conclusion:

Hutchins’s subsequent May 19 statement was a direct result of the reinitiation of communication by NCIS.[10] Accordingly, under the circumstances of this case, it was error for the military judge to admit the statement made by Hutchins on May 19, 2006.[11] For an error in admitting the statement to be harmless beyond a reasonable doubt, this court must be convinced that there was no reasonable likelihood that its erroneous admission contributed to the verdict. See United States v. Mitchell, 51 M.J. 234, 240 (C.A.A.F.1999). The Government made use of Hutchins’s detailed statement in its opening statement, closing argument, and rebuttal argument and as evidence to corroborate other evidence and to attack the opinion of the defense expert witness. Therefore, notwithstanding the other evidence of Hutchins’s guilt, there is a reasonable likelihood that the statement contributed to the verdict.

Decision

The request by NCIS to Hutchins for his consent to search his belongings reinitiated communication with Hutchins in violation of his Fifth Amendment rights as interpreted *300 by the Supreme Court in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and Oregon v. Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Accordingly, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed. The findings and the sentence are set aside. The record is returned to the Judge Advocate General of the Navy for referral to an appropriate convening authority who may authorize a rehearing.

. Hutchins was initially charged with one specification of conspiracy to commit larceny, housebreaking, kidnapping, false official statements, murder, and obstruction of justice, two specifications of making false official statements, one specification each of premeditated murder, larceny, housebreaking, and kidnapping, two specifications of obstruction of justice, and four specifications of assault.

. We granted review of the following issues:
I. Whether the findings and sentence must be dismissed with prejudice where unlawful command influence from the Secretary of the Navy has undermined substantial post-trial rights of the Appellant.
II. The Appellant was interrogated by NCIS concerning his involvement in the alleged crimes, and terminated the interview by invoking his right to counsel. Appellant was thereafter held incommunicado and placed in solitary confinement where he was denied the ability to communicate with a lawyer or any other source of assistance. Appellant was held under these conditions for 7 days, whereupon NCIS re-approached Appellant and communicated with him regarding their ongoing investigation. In response, Appellant waived his previously invoked right to counsel and subsequently provided NCIS a sworn statement concerning the alleged crimes. Did the military judge err when he denied the defense motion to suppress the Appellant’s statement? See Edwards v. *296 Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and United States v. Brabant, 29 M.J. 259 (C.M.A.1989).
United States v. Hutchins, 71 M.J. 344 (C.A.A.F.2012) (order granting review).

. Issue I addresses matters occurring during the post-trial appellate and secretarial review of the case. Issue II addresses claims of error at trial. In light of our resolution of Issue II — that the military judge committed prejudicial error at trial in failing to suppress Hutchins’s statement— Issue I has no bearing on our decision. Accordingly, we do not address granted Issue I. Hutchins, 71 M.J. 344.

. The investigator testified that he was exhausted after a long day and wanted to be fresh the next morning.

."Fidelity to the doctrine announced in Miranda requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated.” Berkemer v. McCarty, 468 U.S. 420, 437, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). It is hard to imagine a situation where this would be more of a concern than in the present case, i.e., while deployed to a foreign country in a combat environment Hutchins was held in essentially solitary confinement in a trailer for seven days after invoking his right to counsel; despite his request for counsel, no attorney was provided during this period and no explanation was provided to Hutchins as to why; he was held incommunicado (other than a chance conversation with a chaplain for three or four minutes); and he was not allowed to use a phone, the mail system, or other means of communication to contact an attorney, family, friends, or anyone else.

. See Bradshaw, 462 U.S. at 1045, 103 S.Ct. 2830 ("While we doubt that it would be desirable to build a superstructure of legal refinements around the word 'initiate' in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to ‘initiate’ any conversation or dialogue.”).

. [Defense Counsel]: Now, getting to your purpose for coming back to Sergeant Hutchins, you went back to Sergeant Hutchins to further your investigation, didn’t you?
[Investigator]: Yes

. See Bradshaw, 462 U.S. at 1045, 103 S.Ct. 2830 ("There are some inquiries, such as a request for a drink of water or a request to use a telephone ... relating to routine incidents of the custodial relationship, [that] will not generally 'initiate' a conversation in the sense in which that word was used in Edwards.”); see also United States v. Applewhite, 23 M.J. 196, 199 (C.M.A.1987) (request to take a polygraph examination initiated by investigator after an invocation of right to counsel was "in blatant disregard of Miranda and Edwards ").

. As noted, generally a request for consent to search does not itself implicate the Fifth Amendment. 34 M.J. at 135. This is because a request for consent to search is not considered "interrogation.” Id.; see also M.R.E. 305(b)(2) (defining “interrogation” as including “any formal or informal questioning in which an incriminating response either is sought or is a reasonable consequence of such questioning”); Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (" ‘[interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.”). To be clear, our decision in this case does not affect this basic proposition. However, the issue we address today is not whether the request for consent to search was an "interrogation,” hut rather was it a reinitiation of "further communication” prohibited by Edwards and Bradshaw.

. Although a request for consent to search is not in itself an interrogation under Frazier, we do not agree with the dissent’s suggestion that such a request has no bearing on the separate legal question as to whether, under all the surrounding circumstances, the Government reinitiated a communication under Edwards and Bradshaw. United States v. Hutchins, 72 M.J. 294, 305-07 (C.A.A.F.2013) (Baker, C.J., dissenting). In this case, for example, the communication was more than a simple request for consent to search, but instead included an implicit accusatory statement.

. Because the Government reinitiated communication with Hutchins concerning the criminal investigation, it is unnecessary to resolve whether Hutchins knowingly and intelligently waived the prior invocation of his right to counsel before the interrogation that resulted in his statement on May 19, 2006. See Edwards, 451 U.S. at 482, 101 S.Ct. 1880.