# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

_____

**Misc. Dkt. No. 2016-16**

_____

**UNITED STATES**
*Appellant*

**v.**

**Chad A. BLATNEY**

Senior Airman (E-4), U.S. Air Force, *Appellee*

_____

Appeal by the United States Pursuant to Article 62, UCMJ

Decided 22 May 2017

_____

*Military Judge:* Christina M. Jimenez.

*SpCM convened at Dyess Air Force Base, Texas.*

*For Appellant:* Major Mary Ellen Payne, USAF (argued); Colonel Katherine E. Oler, USAF; Gerald R. Bruce, Esquire.

*For Appellee:* Major Johnathan D. Legg, USAF (argued); Colonel Jeffrey G. Palomino, USAF.

Before DREW, J. BROWN, and HARDING, *Appellate Military Judges.*

Senior Judge J. BROWN delivered the opinion of the court, in which Chief Judge DREW and Judge HARDING joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

J. BROWN, Senior Judge:

The Government brings this appeal under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862, asserting the military judge erred as a matter of law by suppressing the contents of a digital copy of data from

the cell phone of Senior Airman Blatney—the accused below and Appellee in this action. The Government asserts that an investigator's request for Appellee to unlock his cell phone, following Appellee's voluntary consent to search that same cell phone, did not constitute interrogation and should not have been suppressed. For the reasons set forth in our court's recent published decision in *United States v. Robinson*, No. ACM 38942 (A.F. Ct. Crim. App. 15 May 2017), *available at* http://afcca.law.af.mil/content/index.html, we vacate the military judge's ruling and thereby grant the Government's appeal.[1]

## I. BACKGROUND

Appellee is charged with one specification of wrongfully using cocaine in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The day before trial, trial defense counsel filed a pretrial motion to suppress the Universal Forensic Extraction Device (UFED) report of Appellee's iPhone and all derivative evidence therefrom.

After the presentation of evidence and argument by counsel, the military judge granted the Defense motion, issuing an 18-page ruling. The military judge later supplemented the original ruling with two pages of additional facts. Though the Government disagrees with the military judge's conclusions of law, the Government does not assert that any of the military judge's findings of fact were clearly erroneous.

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction to hear this appeal under Article 62(a)(1)(B), UCMJ, 10 U.S.C. § 862(a)(1)(B), which authorizes the Government to appeal "[a]n order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding" in a court-martial in which a military judge presides and in which a punitive discharge may be adjudged.

We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion. *United States v. Nieto*, 76 M.J. 101, 105 (C.A.A.F. 2017) (citing *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016)). The military judge's findings of fact are reviewed for clear error, but her conclusions of law are reviewed de novo. *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187

---

[1] We heard oral argument in this case on 6 April 2017 at the University of Houston Law Center as part of this court's Project Outreach.

(C.A.A.F. 2004). However, "[a] military judge abuses [her] discretion when [her] findings of fact are clearly erroneous, when [she] is incorrect about the applicable law, or when [she] improperly applies the law." *United States v. Seay,* 60 M.J. 73, 77 (C.A.A.F. 2004). "In reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party." *United States v. Rodriguez*, 60 M.J. 239, 246–47 (C.A.A.F. 2004) (quoting *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)).

Because this issue is before us pursuant to a Government appeal, we may act only with respect to matters of law. Article 62(b), UCMJ. We may not make findings of fact, as we are limited to determining whether the military judge's factual findings are clearly erroneous or unsupported by the record. *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995). "When a court is limited to reviewing matters of law, the question is not whether a reviewing court might disagree with the trial court's findings, but whether those findings are 'fairly supported by the record.'" *Gore*, 60 M.J. at 185 (quoting *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985)).

For purposes of this appeal, the pertinent facts as found by the military judge are not in dispute, and we accept those findings of fact as they are not clearly erroneous. Consequently, the sole issue before this court is a question of law that we review de novo.

### III. THE MILITARY JUDGE'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Air Force Office of Special Investigations (AFOSI) began this investigation after learning Appellee tested positive in an urinalysis. After Appellee reported to AFOSI for an interview, the agents, pursuant to normal operating procedure, searched and removed Appellee's property from his possession prior to placing him in the interview room. The two agents who searched Appellee took his personal property—which consisted of his keys, iPhone, and miscellaneous items—and placed it on a table next to the interview room.

Appellee was then taken into the interview room. He was not free to leave. The interview was recorded. An investigator read the Article 31, UCMJ, 10 U.S.C. § 831, rights advisement card to Appellee, and he unequivocally invoked his right to counsel.

Following that invocation, investigators asked Appellee whether he consented to the search of his cellular phone, vehicle, and residence. Appellee consented to the search of those items. The military judge concluded that Appellee freely and voluntarily gave consent to search these items.

Investigators then retrieved the standard Air Force consent forms and began filling out the forms with the assistance of Appellee. After completing the written forms, an agent asked Appellee if he had a lock on his phone and

he responded that he did. The agent then stepped out of the interview room, retrieved Appellee's iPhone that was on the table, and walked back into the interview room while holding the iPhone toward Appellee. The following exchange occurred:

AFOSI:    If you won't mind a, just unlocking it [the accused took the phone handed to him] and also just turning it off, the lock or whatever for me.

ACC:      Okay.

AFOSI:    Appreciate that.

ACC:      Do you know how to turn the lock off man? [raises voice to agents who have departed the room]

AFOSI:    A, gosh, go settings, . . .

AFOSI:    Passcode [points to the phone screen]

ACC:      Oh.

AFOSI:    Enter it, enter your passcode again and then it will say turn off.

ACC:      Okay, there it is. This.

AFOSI:    Should be good.

ACC:      Yep, there you go.

Investigators ultimately recovered several text messages from Appellee's cellular phone regarding his urinalysis test. It was these messages that Appellee sought to suppress and that the Government sought to introduce at trial.

The military judge concluded that Appellee was in custody and remained in custody for the duration of the interview, including during the subsequent requests for consent to search. Further, the military judge found that Appellee unequivocally invoked his right to counsel prior to investigators requesting consent to search his personal belongings. She also determined that the request for consent was permissible and, under the totality of the circumstances, Appellee voluntarily consented to the search of his property, to include the cell phone at issue in this appeal.[2]

---

[2] The military judge did not make a specific finding as to whether the accused's decision to unlock his phone was voluntary. Although the military judge's ruling suggested this too was voluntary, the military judge can clarify this finding upon further review.

The military judge then concluded, however, that the subsequent request for Appellee to unlock his phone was improper as it constituted a re-initiation of questioning and the act of unlocking the phone constituted a non-verbal statement. The military judge's specific rationale, apparently relying primarily on this court's prior unpublished decision in *United States v. Bondo*, No. ACM 38438, (A.F. Ct. Crim. App. 18 Mar. 2015) (unpub. op.), *available at* http://afcca.law.af.mil/content/opinions_cnm_2015.html, was:

> [A]fter the accused's invocation and authorization to consent to search, the communications initiated by AFOSI violated the accused's Fifth Amendment rights. The request by [AFOSI] to have the accused use his passcode to unlock the cell phone was more than an extension of the original request for consent to search. It was more than routine incidents of a custodial relationship. [The agent] wanted to access the accused's phone and knew incriminating evidence was a reasonable consequence of such questioning. Therefore, the nonverbal statement made by the accused unlocking his cell phone (the act of typing his passcode) is not admissible. Accordingly, all information gathered from his phone is excluded and inadmissible.

Although the military judge did not articulate what information was purportedly communicated by unlocking the phone, Appellee asserts on appeal that the act of unlocking the phone communicated that Appellee knew the passcode to his own cell phone, and Appellee further claims that such knowledge implicitly suggests that: (1) the iPhone was passcode protected, (2) without the passcode the iPhone could not be used, (3) Appellee created the passcode, (4) Appellee was the only person who could use the phone, and (5) Appellee was the person responsible for anything done with the phone.

The Government, however, had not yet sought to introduce evidence to the factfinder that Appellee personally unlocked the cell phone or knew the passcode, and, during oral argument, the Government asserted that they did not "need" to introduce Appellee's responses to the request for consent to search or his actions unlocking the phone. The Government, instead, seeks only to admit certain information discovered through the subsequent search of Appellee's phone.

## IV. ANALYSIS

In light of our recently issued published decision in *Robinson*, we vacate the military judge's decision. We do so not only to permit her to analyze this issue consistent with that opinion, but also to clarify whether the investigators request to Appellee to unlock his iPhone constituted interrogation.

In *Robinson*, we considered the similar question of whether a suspect who has invoked his right to counsel may be asked for the passcode to his phone when he consents to a search of that phone. *Id*. at 8. As we noted there, it is settled law that a request for consent to search is not interrogation, and consent is ordinarily not a "statement." *Id*. at 4. Thus, there must be some communicative aspect of providing the passcode itself that is reasonably likely to elicit an incriminating response in order to implicate the Fifth Amendment privilege against self-incrimination.[3] *Id*. at 10-11. We held that, under the facts of that case, the agent's request for a passcode was not reasonably likely to result in an incriminating response because "there was no dispute as to Appellant's ownership, dominion, or control over the phone . . . ." *Id*. at 11. Thus, the request for the passcode "did not constitute 'interrogation' in violation of the Fifth Amendment." *Id*. Ultimately, the court concluded that the military judge did not err when he denied Robinson's motion to suppress the results of that search. *Id*.

Though we recognize the similarities of this case with *Robinson*, we also acknowledge that it remains a fact-specific determination whether asking a suspect to unlock a device he has previously consented to have searched is reasonably likely to elicit an incriminating response. The military judge's finding of fact was ambiguous as to this issue and fails to explain how, under the facts of this case, Appellee's entry of his passcode was, itself, an incriminating communication. In the analysis portion of the military judge's ruling, she did summarily refer to "further OSI-initiated interrogations." Unfortunately, she failed to analyze or consider why further questions constituted an interrogation under the specific facts and circumstances of this case. Despite this legal conclusion, the supplemental findings of fact supported that the identity and location of Appellee's phone—as well as his ownership, dominion, and control over it—were already established and not in dispute. If what was communicated by Appellant in unlocking the phone was not in dispute, it is difficult to ascertain the basis for the military judge's determination—if indeed there was one—that any of the post-invocation questions and requests constituted interrogation.[4]

---

[3] U.S. CONST. amend. V.

[4] We acknowledge that this was likely the result of the military judge relying on this court's prior decision in *United States v. Bondo*, No. ACM 38438, (A.F. Ct. Crim. App. 18 Mar. 2015) (unpub. op.), *available at* http://afcca.law.af.mil/content/opinions_cnm_2015.html. Since the military judge's ruling in this case, however, we have found the analysis in *Bondo* unpersuasive. *Robinson*, slip op. at 10.

Furthermore, while the military judge ruled that Appellee's rights were violated based on a reinitiation of communication, we found it unnecessary in *Robinson* to determine whether requesting the passcode under the facts of that case constituted a reinitiation of communication representing a desire to open a more generalized discussion related to the investigation, *see United States v. Hutchins*, 72 M.J. 294, 298 (C.A.A.F. 2013). This was because, in *Robinson*, no post-invocation generalized discussion—or incriminating statement—ever occurred. *Id.*; *see also United States v. Griffing*, No. ACM 38443, 2015 CCA LEXIS 101 at *12–13, n.7 (A.F. Ct. Crim. App. 23 Mar. 2015) (unpub. op.). This same rationale would apply equally here if, indeed, nothing about the act itself of entering the password communicated, under the circumstances, an incriminating statement. In other words, whether agents or the suspect re-initiated communication only becomes relevant if the suspect ultimately communicated an incriminating statement to the agents.

Upon remand, the military judge will first need to determine whether, under the facts and circumstances of this case, Appellee's act of entering his password itself—not what was found on the phone—communicated an incriminating statement. If the military judge concludes it did—for reasons not yet clear on this record—only then would she need to analyze whether that incriminating statement followed an impermissible reinitiation by agents.[5]

## V. CONCLUSION

Accordingly, the appeal of the United States under Article 62, UCMJ, is **GRANTED**. The military judge's ruling to grant the Defense motion to suppress the contents of the UFED report and all derivative evidence therefrom is **VACATED**, and the record of trial is returned to The Judge Advocate General for remand to the convening authority and delivery to the military judge for further proceedings consistent with this opinion.



FOR THE COURT

MICAH L. SMITH
Deputy Clerk of the Court

---

[5] We also note that in *Robinson*, unlike here, there was an express finding that Robinson voluntarily provided his passcode. *Id.* at 7. Here, should the military judge upon remand find otherwise—that Appellee's inputting his passcode was *involuntary*—a different analysis would apply to whether the subsequent search was lawful.