*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, DALY, and MIZER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Joshua S. NEGRON**
Gunnery Sergeant (E-7), U.S. Marine Corps
*Appellant*

**No. 202300164**

_____

Decided:  27 December 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Kevin S. Woodard (arraignment and motions)
Eric A. Catto (motions and trial)

Sentence adjudged 2 February 2023 by a general court-martial convened at Marine Corps Air Station Cherry Point, North Carolina, consisting of officer and enlisted members. Sentence in the Entry of Judgment: no punishment adjudged.

For Appellant:
*Mr. Phillip Stackhouse* (argued)
*Lieutenant Colonel Matthew E. Neely, USMC* (on brief)

For Appellee:
*Major Candace G. White, USMC* (argued)
*Lieutenant Commander James P. Wu Zhu, JAGC, USN* (on brief)

Judge MIZER  delivered the opinion of the Court, in which Senior Judge KISOR and Senior Judge DALY joined.

---

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

---

MIZER, Judge:

Appellant was convicted, contrary to his pleas, of one specification of violating a lawful general order, in violation of Article 92, Uniform Code of Military Justice [UCMJ],[1] by wrongfully consuming an alcoholic beverage.

Appellant asserts two assignments of error (AOEs): (1) whether the Government engaged in unlawful command influence (UCI) by interfering with Appellant's right to counsel; and (2) whether the Government violated Appellant's Article 38(b), UCMJ, rights by interfering with his established attorney-client relationship. Each of these AOEs has merit. And as set forth fully below, Appellant's conviction is set aside and this case is dismissed with prejudice.

## I. BACKGROUND

The ignominious facts of this case are well known and set forth fully in *United States v. Gilmet,*[2] a companion case arising from the same allegations of involuntary manslaughter, negligent homicide, obstruction of justice, and violating a lawful general order. In short, while Appellant's case was awaiting trial, Colonel Shaw, who then oversaw the slating and assignment process for all Marine Corps judge advocates, held a meeting with members of the Defense Services Office (DSO) at Camp Lejeune, North Carolina, where he told the assembled defense bar that successfully defending their clients could jeopardize their future assignments and potential for promotion.[3]

---

[1] 10 U.S.C. § 892.

[2] 83 M.J. 398, 400-02 (C.A.A.F. 2023).

[3] *Id.* at 406.

Upon learning that the Marine Corps expected defense counsel to be mere set pieces in a fixed fight—or else, the defense counsel in *Gilmet* moved to withdraw from the case due to a conflict of interest. The military judge granted that motion, and a month later, dismissed *Gilmet* with prejudice after finding actual unlawful command influence and material prejudice to the appellant's statutory right to counsel.

While all of this was occurring in *Gilmet*, Appellant's detailed defense counsel contemporaneously raised a similar conflict of interest in this case. And while that litigation was pending resolution, this Court, on 15 August 2022, reversed the military judge in *Gilmet*.[4] We concluded that Colonel Shaw's comments were not the proximate cause of the release of the appellant's counsel. This Court also held that Colonel Shaw's comments would not otherwise affect the proceedings.

Less than a month later, after affording Appellant the opportunity to file "a supplemental UCI motion purportedly distinguishing the NMCCA *Gilmet* ruling from this common trial," the military judge in this case dutifully applied our decision and denied Appellant's motion to dismiss for unlawful command influence.[5] The military judge concluded, "even in with the more egregious facts in *Gilmet*, the NMCCA ruled that Colonel Shaw's comments did not create an objective conflict of interest for the *Gilmet* defense counsel which would amount to actual or apparent UCI. This Court reaches the same conclusion for this common trial."[6]

He continued, while "this entire situation is certainly unfortunate, given the curative measures taken by the Government and the facts of this common trial, the Court is convinced beyond a reasonable doubt Colonel Shaw's comments do not constitute actual or apparent UCI."[7] "Instead, both of the accused voluntarily fired their counsel, asserting that in their personal opinions, their counsel labored under an actual conflict of interest, despite their attorneys' declination to request withdrawal from representation."[8]

---

[4] 2022 CCA LEXIS 478 (N-M. Ct. Crim. App. 2022) *rev'd by United States v. Gilmet*, 83 M.J. 398 (C.A.A.F. 2023).

[5] A.E. CXVI.

[6] A.E. CXVI at 17.

[7] A.E. CXVI at 18.

[8] A.E. CXVI at 17.

A year after the military judge penned those words, our superior Court, the Court of Appeals for the Armed Forces (CAAF), overruled our decision in *Gilmet.* Finding actual unlawful command influence, the CAAF held that Colonel Shaw's remarks "ultimately led to Appellant's consent to the withdrawal of his military counsel."[9] And the CAAF rejected the same curative measures taken in this case saying they "did nothing to address the damage that Colonel Shaw's statements had on Appellant's relationship with his military counsel."[10]

The CAAF also held that the Government violated Gilmet's statutory right to counsel pursuant to Article 38, UCMJ. The Court rejected the Government's argument that Gilmet's Article 38(b) rights were not violated "because he consented to the withdrawal of counsel."[11] The Court concluded that the Government "prejudiced Appellant's Article 38 rights by creating the perception in the minds of Appellant's defense counsel that their future in the Marine Corps would be jeopardized if they continued to zealously advocate for Appellant."[12]

## II. DISCUSSION

Our nation remains a government of laws, not men. The CAAF has spoken clearly on this matter, and it is regrettable that we must disinter *Gilmet*.

But the Government insists we do so, with its principal argument being that, unlike the military judge in *Gilmet*, the military judge in this case found that Colonel Shaw's remarks were not the proximate cause of the severance of Appellant's attorney-client relationship with his counsel. The Government further argues that we are bound by this conclusion unless it is clearly erroneous. But the military judge in this case was merely parroting our decision in *Gilmet* where we concluded that while Colonel Shaw's remarks "began the chain of events leading to the excusal of Appellee's counsel, they were not its proximate cause."[13]

And our decision was reversed.

In light of the CAAF's decision in *Gilmet*, the military judge's resolution of the mixed question of law and fact as to the proximate cause of the release of

---

[9] *Gilmet*, 83 M.J. at 404.

[10] *Id.*

[11] *Id. at* 407.

[12] *Id.* at 408.

[13] *Gilmet*, 2022 CCA LEXIS 478 at *21 *rev'd by Gilmet*, 83 M.J. 398.

Appellant's counsel is clearly erroneous. Indeed, to hold that only one of three, similarly-situated defense teams were impacted by the unlawful command influence present in this case would be slicing the baloney mighty thin, and we decline to do so.

The Government strains to distinguish this case on the basis that the defense counsel in this case were not present for Colonel Shaw's remarks. But in that regard they are no different than *Gilmet's* Captain Riley, who was also not present but, "after hearing what Colonel Shaw said, he also believed that he could no longer represent Appellant without putting his career in jeopardy."[14] And the military judge in this case, unsurprisingly, found that "word quickly spread through the DSO" regarding Colonel Shaw's remarks.[15] That, apparently, was the entire point.

And we are equally unconvinced by the military judge's conclusion that the facts of *Gilmet* are more egregious and that the more experienced counsel detailed to this case were "better equipped to understand that Colonel Shaw's comments did not represent [Judge Advocate Division's] position regarding defense work."[16] Just the opposite. Unmentioned in either of the previous *Gilmet* decisions was Colonel Shaw's specific reference to two other high-profile, Marine homicide cases that began in Haditha and Hamdania, Iraq in the early 2000s.[17]

More senior judge advocates would remember that at least one of those cases, *United States v. Hutchins*, spent more than two decades winding its way through the military's appellate courts and, among other issues, involved litigation over unlawful command influence after a former Secretary of the Navy "expressed surprise and disappointment with the sentences awarded and the prospect of continuing service for the personnel involved in this case."[18]

And there stood Colonel Shaw, before an assembled group of defense attorneys, describing how the Marine Corps had retaliated against the defense counsel in those high-visibility, homicide cases through the invisible hand of

---

[14] *Id.* at 401.

[15] A.E. CXVI at 5.

[16] A.E. CXVI at 5.

[17] A.E. CXVI at 5.

[18] *United States v. Hutchins*, 2012 CCA LEXIS 93, *32 n.1 (N-M. Ct. Crim. App. 2012) *rev'd* 72 M.J. 294 (C.A.A.F. 2013).

Marine Corps detailing and promotion boards. Colonel Shaw offered these specific cases to buttress his point that defense attorneys "may think they are shielded [from outside influence], but they are not protected."[19] Put another way, he had the receipts.

It is difficult to conceive of a more sophisticated, premeditated, and ruinous assault on a load-bearing pillar of military justice—the independence of the military's defense bar from unlawful command influence.

We hope that none of what was said is true.[20] But what makes Colonel Shaw's remarks so pernicious is they are not easily disproven. Worse, Colonel Shaw's remarks were so profoundly against his own interest that the law traditionally cloaks them in the trappings of reliability.[21] Under the narrow circumstances of this high-profile, homicide case, we can hardly blame Appellant for believing—wrongly—that the defense bar of the Navy and Marine Corps was a Potemkin village, and wanting no part of it.[22]

This case ably demonstrates why unlawful command influence remains the mortal enemy of military justice.[23] And if military judges are the last sentinels protecting an accused from such influence,[24] military defense counsel are often the first.[25] The Sailors and Marines presently standing the watch on behalf of our nation are entitled to the zealous champions guaranteed by statute and

---

[19] *Gilmet*, 83 M.J. at 401.

[20] We have previously expressed our view that Colonel Shaw's remarks were nothing more than confounding fantasy. *Gilmet*, 2022 CCA LEXIS 478 at *21 *rev'd by Gilmet*, 83 M.J. 398.

[21] *See*, Mil. R. Evid. 804(b)(3); *United States v. Harris*, 403 U.S. 573, 583 (1971)("Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of police in the form of their own admissions.").

[22] *United States v. Petty*, 982 F.2d 1365, 1371 (9th Cir. 1993)(Noonan, J. dissenting)(describing Potemkin Villages in the legal context as "attractive but illusory structures that suggest a health state of constitutional safeguards that do not actually exist.")(internal citation omitted).

[23] *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986).

[24] *United States v. Rivers*, 49 M.J. 434, 443 (C.A.A.F. 1998).

[25] *United States v. Harvey*, 64 M.J. 13, 17 (C.A.A.F. 2006)("[E]veryone involved in both unit command and in military justice must exercise constant vigilance to protect against command influence becoming unlawful."); *In re Al-Nashiri*, 821 F.3d 224, 239 (D.C. Cir. 2019)("[C]riminal justice is a shared responsibility.").

*Gideon v. Wainwright.*[26] And this Court will not permit *Gideon's* promise to be rendered meaningless by unlawful command influence.

### III. CONCLUSION

After careful consideration of the record, as well as the briefs of appellate counsel, the findings and sentence are **SET ASIDE and the Charge and its Specification are DIMISSED WITH PREJUDICE**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[26] 372 U.S. 335 (1963).