# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39732**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Blair V. BAUER**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 January 2021

————————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Dishonorable discharge, confinement for 4 years, and reduction to E-1. Sentence adjudged 15 February 2019 by GCM convened at Francis E. Warren Air Force Base, Wyoming.

*For Appellant:* Major Benjamin H. DeYoung, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Senior Judge POSCH and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of one specification of wrongful possession of child pornography in violation of Article 134, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for four years, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant raises four issues[2] on appeal: (1) whether the evidence is legally and factually sufficient to support his conviction; (2) whether the military judge erred by denying the Defense's motion to suppress the results of a search of Appellant's electronic devices; (3) whether Appellant's trial defense counsel was ineffective by failing to include a revocation of consent to search in her notice of representation; and (4) whether Appellant is entitled to relief for facially unreasonable post-trial delay.[3] We find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

On 13 January 2017, the Air Force Office of Special Investigations (AFOSI) detachment at Francis E. Warren Air Force Base (AFB), Wyoming, received a tip from the National Center for Missing and Exploited Children (NCMEC) that images of suspected child pornography had been uploaded from a phone with a number belonging to Appellant. On 27 January 2017, AFOSI agents interviewed Appellant's then-spouse, Staff Sergeant (SSgt) AP.[4] SSgt AP told the agents that Appellant owned a cell phone, a laptop computer, a tablet, and a desktop computer. SSgt AP told the agents she and Appellant both used the desktop computer, but only Appellant used the other devices. SSgt AP gave her consent for the agents to search for electronic devices in the residence she shared with Appellant. SSgt AP went with the agents to the residence.

On the same day, two AFOSI agents visited the base Security Forces investigations section, where Appellant worked as an investigator. The agents, whom Appellant knew, asked him to come to the AFOSI detachment to assist them with a case. At the detachment, the agents read Appellant his Article 31, UCMJ, 10 U.S.C. § 831, rights and advised him he was suspected of possession of child pornography. Appellant requested legal counsel. However, when asked, Appellant consented orally and in writing to the seizure and search of his cell phone, laptop, and tablet. Appellant had his cell phone with him, but

---

[1] All references in this opinion to the Uniform Code of Military Justice and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] We have slightly reordered the issues.

[3] Although not raised by Appellant, we also consider whether Appellant is entitled to relief for facially unreasonable appellate delay.

[4] During their marriage, SSgt AP went by a different name. SSgt AP and Appellant divorced before Appellant's trial.

told the agents his laptop and tablet were at his residence. At the agents' request, he provided them a limited description of his laptop and tablet. The agents took Appellant's phone and extracted data from it on the same day, 27 January 2017, before returning it to Appellant.

Meanwhile, at Appellant's residence, SSgt AP identified Appellant's laptop and tablet for the agents there. The agents at the residence took photographs of the devices and provided them to the agents who were with Appellant at the detachment. Those agents showed the photographs to Appellant and asked if the devices were his, and Appellant confirmed that they were. The agents seized the laptop and tablet pursuant to Appellant's written consent, and seized the desktop computer pursuant to SSgt AP's consent.

On 30 January 2017, the agents examined the contents of Appellant's laptop and tablet and the data extracted from Appellant's phone. The search of the latter revealed approximately 100 images of suspected child pornography. The following day, 31 January 2017, Appellant through counsel revoked his prior consent to search his property.

However, the discovery of suspected child pornography on Appellant's phone led the agents to seek and obtain a search warrant for Appellant's residence. On 7 February 2017, the agents seized two external hard drives from Appellant's residence. Subsequent examination of the cell phone, laptop, and two hard drives revealed the presence of over 15,000 images—photographs and videos—of suspected child pornography. Appellant was subsequently charged with possession of child pornography found in unallocated space across the four devices. The Government identified 4,028 images of alleged child pornography for which it sought to convict Appellant. The military judge found Appellant guilty of the Charge and its Specification. At the Defense's request, the military judge made special findings in which he listed the images with respect to which he found Appellant not guilty. The military judge found Appellant guilty with respect to 3,585 of the images and not guilty with respect to 443 images.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (alteration in original) (citation omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

In order to convict Appellant of the charged offense of possession of child pornography in violation of Article 134, UCMJ, the Government was required to prove: (1) that at or near Cheyenne, Wyoming, between on or about 9 December 2014 and on or about 7 February 2017, Appellant knowingly and wrongfully possessed child pornography, specifically one or more digital images of a minor engaging in sexually explicit conduct; and (2) that under the circumstances Appellant's conduct was of a nature to bring discredit upon the armed forces. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 68b.b.(1). "Child pornography" is defined as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 68b.c.(1). "Sexually explicit conduct" includes "actual or simulated" sexual intercourse, sodomy, bestiality, masturbation, sadistic or masochistic abuse, or the "lascivious exhibition of the genitals or pubic area of any person." *MCM*, pt. IV, ¶ 68b.c.(7).

**2. Analysis**

At trial, the Government introduced compelling evidence of Appellant's guilt. The Government called as witnesses SSgt AP (Appellant's spouse at the time); AFOSI agents involved in obtaining Appellant's electronic devices and extracting and examining data from his phone; and Ms. TK, a forensic examiner at the Defense Cyber Crime Center's Cyber Forensic Laboratory

(DC3/CFL), who testified as an expert in digital forensics regarding her analysis of Appellant's digital devices. Ms. TK's testimony in particular, which lasted well over one full day of the trial, was very detailed and technical. However, an extended discussion of the evidence is not required here; a brief summary of key aspects of the Government's proof will suffice.

Of more than 15,000 images of suspected child pornography found on Appellant's devices, the Government selected 4,028 images to offer into evidence, copies of which it introduced on an external hard drive as Prosecution Exhibit 1. As noted above, the military judge provided special findings by which he found Appellant guilty with respect to 3,585 of the charged images.[5] Generally speaking, the photographs and videos for which Appellant was convicted evidently depict young children well under the age of 18 years. Many of the images depict children posed to display their genitals; others depict children engaged in sexual acts with adults or other apparent minors, and other forms of "sexually explicit conduct." Ms. TK found over 400 images that had been identified by NCMEC to be confirmed depictions of child pornography. We conclude the material for which Appellant was convicted was in fact child pornography.

The images were located on multiple devices, specifically Appellant's phone, his laptop, and the two hard drives. Some particular images were located on multiple devices. The presence of child pornography on four different devices, and the presence of the same images on multiple devices, suggests the user had knowledge, control, and an intent to retain possession of the images. All of the charged images were recovered from "unallocated space" on the devices. Ms. TK explained that data files found in unallocated space—that is, space available to be overwritten by additional data—were "active at one point on the drive" before being deleted.

The record discloses little basis to conclude that anyone other than Appellant exercised control over these devices. The other residents in Appellant's home were SSgt AP and her young son, both of whom moved in during October 2016; she testified the only electronic device she shared with Appellant was the desktop computer, and none of the images in Prosecution Exhibit 1 were from that device. The evidence indicated that child pornography appeared on the devices prior to October 2016. At trial and on appeal, Appellant has not attempted to implicate SSgt AP or otherwise meaningfully challenged that he exercised exclusive control over his phone, laptop, and external hard drives where the images in Prosecution Exhibit 1 were found.

---

[5] Some of the images are duplicates, representing copies of the same files located on different devices.

Other evidence tending to support that Appellant knowingly possessed child pornography included, *inter alia*, dozens of Kik[6] contacts under Appellant's desktop computer profile with user names suggestive of shared interest in child pornography; evidence of user-created folders with titles including "PTHC13year-old," "little Lolitas," and names suggesting several categories of incest, including parent/child; and other forensic evidence tending to show Appellant opened video files which, although the files themselves were not recovered from the devices, featured names suggestive of child pornography.

Appellant contends the Government failed to prove he knowingly possessed child pornography. He notes that DC3/DCFL found approximately 437,000 total images on his devices, including a large quantity of legal pornography. He contends that evidence that a file was accessed, saved, or moved does not necessarily prove the user knew what was on the file. We are not persuaded. We find the evidence adduced convincingly demonstrates Appellant knowingly as well as wrongfully possessed child pornography, as the military judge found.

Accordingly, drawing every reasonable inference from the evidence of record in favor of the Government, we conclude the evidence was legally sufficient to support Appellant's conviction beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. Additionally, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325.

**B. Defense Motion to Suppress**

**1. Additional Background**

Before trial, the Defense moved to suppress evidence obtained from Appellant's laptop and the two external hard drives. The Defense contended that this evidence was obtained in violation of the Fifth Amendment[7] and Article 31, UCMJ, because AFOSI agents asked Appellant to confirm his ownership of the laptop and tablet after Appellant had invoked his rights to counsel and to remain silent. During the motion hearing, trial defense counsel expanded the objection to include Appellant's oral statements describing the devices and identifying pictures of them. The Defense did not move to suppress the data the agents extracted from Appellant's phone with his consent. The Government opposed the motion.

---

[6] At trial, Ms. TK described Kik as "a social media third-party application in which people can search for like interests," and agreed that it was "an application that users can share files across."

[7] U.S. CONST. amend. V.

After receiving evidence and hearing argument on the motion, the military judge issued a written ruling. The military judge found that Appellant was in AFOSI custody on 27 January 2017 when he invoked his right to counsel and gave his consent to search. The military judge further found the agents did not violate Appellant's Fifth Amendment or Article 31, UCMJ, rights by asking for his consent to search his phone, laptop, and tablet after Appellant invoked his right to counsel. However, relying on *United States v. Burns*, 33 M.J. 316, 320 (C.M.A. 1991), the military judge concluded that the agents did violate Appellant's Fifth Amendment and Article 31 rights when they asked him to describe his laptop and tablet, and asked him to identify images of the devices. He explained that at the time the agents were still in the process of attempting to identify Appellant's devices, and their requests that Appellant identify the devices were requests that Appellant potentially incriminate himself by indicating ownership. Accordingly, the military judge granted the Defense's motion with respect to Appellant's statements describing and identifying the devices.

However, the military judge denied the motion to suppress with respect to the searches of the devices themselves. He found the laptop and tablet were "not obtained by use of [Appellant's] statements describing those items," and the agents would have obtained and identified them "with the assistance of [Appellant's] wife even if the statements had not been made."

**2. Law**

We review a military judge's ruling on a motion to suppress evidence for an abuse of discretion. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)). The military judge's findings of fact are reviewed for clear error, but his conclusions of law are reviewed de novo. *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015) (citation omitted). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citation omitted). However, "[a] military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004). "In reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party." *United States v. Cowgill*, 68 M.J. 388, 390 (C.A.A.F. 2010) (citation omitted).

Servicemembers are generally entitled to the protections of the Fifth Amendment. *United States v. Tempia*, 37 C.M.R. 249, 253–55 (C.M.A. 1967). The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. Once a suspect in custody has "expressed his desire to deal with the police only

through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication . . . ." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *see* Mil. R. Evid. 305(e)(3).

"The protections afforded to servicemembers under Article 31(b), UCMJ, [10 U.S.C. § 831(b),] are in many respects broader than the rights afforded . . . under the Fifth Amendment to the Constitution." *United States v. Evans*, 75 M.J. 302, 303 (C.A.A.F. 2016) (citations omitted). Article 31(b), UCMJ, provides:

> No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

A statement is "involuntary" if it is "obtained in violation of the self-incrimination privilege or Due Process Clause of the Fifth Amendment to the United States Constitution, Article 31, or through the use of coercion, unlawful influence, or unlawful inducement." Mil. R. Evid. 304(a)(1)(A); *see also* Article 31(d), UCMJ, 10 U.S.C. § 831(d) ("No statement obtained from any person in violation of [Article 31, UCMJ], or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial."). With limited exceptions, an involuntary statement of an accused and any evidence derived therefrom is inadmissible at trial, provided the defense makes a timely motion or objection. Mil. R. Evid. 304(a).

A request by investigators for consent to search after a suspect has invoked the right to counsel or to remain silent does not infringe upon the Fifth Amendment or Article 31, UCMJ, "because such requests are not interrogations and the consent given is ordinarily not a statement." *United States v. Robinson*, 77 M.J. 303, 306 (C.A.A.F. 2018) (quoting *United States v. Frazier*, 34 M.J. 135, 137 (C.M.A. 1992)). However, a "distinction must be made between granting consent to search property that already has been identified by law-enforcement agents and having a suspect identify property for those agents." *Burns*, 33 M.J. at 321. An investigator may not ask a suspect to identify his property after the suspect has requested counsel. *Id.*

"Evidence that was obtained as a result of an unlawful search or seizure may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made." Mil. R. Evid. 311(c)(2). As the United States Court of Appeals for the Armed Forces (CAAF) has explained:

> The doctrine of inevitable discovery allows for the admission of illegally obtained evidence when the government "demonstrate[s] by a preponderance of the evidence that when the alleged illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence in a lawful manner."

*United States v. Eppes*, 77 M.J. 339, 347 (C.A.A.F. 2018) (alteration in original) (quoting *United States v. Wicks*, 73 M.J. 93, 103 (C.A.A.F. 2014)).

### 3. Analysis

We conclude the military judge did not abuse his discretion by denying the defense motion to suppress evidence from the laptop and hard drives. His conclusion that the Government would have inevitably discovered the evidence was well supported by the record. With the lawful assistance of SSgt AP, the agents had already located Appellant's laptop and tablet independent of Appellant's descriptions and subsequent photo identification. Moreover, it is undisputed that Appellant voluntarily consented to the AFOSI searching these devices. In addition, the AFOSI's extraction of data from Appellant's phone was unaffected by the Fifth Amendment and Article 31 violations. This extraction led to the discovery of approximately 100 images of suspected child pornography, which in turn led to the agents obtaining a search warrant and finding and seizing additional devices at Appellant's residence, specifically the external hard drives. Accordingly, the military judge did not abuse his discretion by finding a preponderance of the evidence indicated the AFOSI already "possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence in a lawful manner." *Eppes*, 77 M.J. at 347 (citation omitted).

## C. Ineffective Assistance of Counsel

### 1. Additional Background

On 30 January 2017, the same day the AFOSI examined the contents of the cell phone extraction, laptop, and tablet that had been obtained with Appellant's consent, the AFOSI detachment received a notice of representation of Appellant from Major (Maj) SM, the area defense counsel at the United States Air Force Academy in Colorado. The notice of representation did not include a revocation of Appellant's prior consent to seize and search his devices. The following day, 31 January 2017, Maj SM delivered to the AFOSI a revocation of consent to search on Appellant's behalf.

At the Government's request, this court ordered and received a sworn declaration from Maj SM.[8] The declaration explained that on 30 January 2017, Maj SM received a client referral for Appellant from the area defense counsel at Francis E. Warren AFB. Maj SM spoke with Appellant and formed an attorney-client relationship with him the same day. During the conversation, Appellant provided a general explanation of the situation, including the fact that he had provided consent for the AFOSI to search his phone, laptop, and tablet. According to Maj SM, after Appellant explained the situation,

> I informed [Appellant] that our first priority would be to revoke his consent to search his property. He stated that he did not want to do so. He explained to me that as a Security Forces Investigator, he fully understood what he had agreed to . . . . He stated he wanted the agents to search his electronics. He repeatedly stated he "didn't do anything wrong and had nothing to hide." I explained the risk of that position even if he was completely innocent of the allegations. . . . No tact [sic] I took swayed him. We discussed the topic at length and I repeatedly provided the advice that he should revoke consent immediately. He maintained the position that he did not want me to revoke consent for the search on his behalf.

Maj SM's declaration further explained that either during this consultation or shortly thereafter, she sent a message to her supervising senior defense counsel explaining the situation, and asking if she should have Appellant document in writing this decision to not revoke consent, contrary to her advice. Maj SM attached a copy of this email and the senior defense counsel's response

---

[8] In *United States v. Jessie*, the CAAF explained the general rule that the Courts of Criminal Appeals (CCAs) "may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ[, 10 U.S.C. § 866(c)]." 79 M.J. 437, 441 (C.A.A.F. 2020) (quoting *United States v. Fagnan*, 30 C.M.R. 192 (C.M.A. 1961)) (additional citation omitted). That Maj SM revoked Appellant's consent on 31 January 2017 rather than in her initial notice of representation on 30 January 2017 is evident in the "entire record," and therefore properly before us for review. *See id.* at 440. The CAAF also recognized that "some [of its] precedents have allowed the CCAs to supplement the record when deciding issues that are raised by materials in the record," specifically with affidavits or hearings ordered pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam). *Jessie*, 79 M.J. at 442. In *Jessie*, the CAAF declined to disturb this line of precedent. *Id.* at 444. Accordingly, we understand *Jessie* to permit our review of Maj SM's declaration. *See id.* at 442 (citation omitted) (noting the CAAF has allowed the CCAs "to accept affidavits or order a *DuBay* hearing when necessary for resolving claims of ineffective assistance of trial defense counsel").

to her declaration. Maj SM told Appellant she would send Appellant a draft memorandum to document his decision not to revoke consent, and Appellant agreed to print it out and sign it the following day. Maj SM acknowledged she "removed the revocation of consent language typically contained in [her] notice of representation" that she sent to the AFOSI.

The following morning, 31 January 2017, Appellant called Maj SM and told her that he had thought about her advice and decided he did want to revoke his consent. Maj SM "immediately" sent a revocation of consent to the AFOSI detachment.

Appellant has not provided a declaration that contradicts Maj SM's account or otherwise challenged the accuracy of her declaration.

**2. Law**

The Sixth Amendment[9] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). We will not second-guess reasonable strategic or tactical decisions by trial defense counsel. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *Mazza*, 67 M.J. at 474).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Id.* (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted).

---

[9] U.S. CONST. amend. VI.

### 3. Analysis

Appellant contends Maj SM provided ineffective assistance of counsel by failing to include a revocation of consent in her initial notice of representation on 30 January 2017. He contends the inclusion of such a revocation is "standard practice," and there is "no strategic or tactical reason" not to include such a revocation. However, Appellant has failed to carry his burden to demonstrate either deficient performance or prejudice.

We find there was a reasonable explanation for Maj SM to not revoke Appellant's consent, and the fact that she did not revoke it was not measurably below the performance expected of defense counsel. *See Gooch*, 69 M.J. at 362. Maj SM's declaration indicates that it was in fact her usual practice to revoke prior consent to search when delivering notice of representation of a client. Moreover, it is evident Maj SM would agree with Appellant's present assertion on appeal that there was no strategic or tactical reason not to revoke consent—which is exactly why revoking it was her "first priority" and why she strongly advised Appellant to do so. Appellant's own specific insistence, contrary to Maj SM's advice, was the reason why she did not initially include the revocation. As soon as Appellant informed Maj SM that he had changed his mind, she sent the revocation to the AFOSI. We decline to hold that a trial defense counsel's failure to act contrary to the express and fully informed desires of her client, albeit contrary to the counsel's advice, was constitutionally deficient performance under *Strickland*.

In addition, Appellant has failed to demonstrate a reasonable probability of a different result. The record is unclear whether AFOSI agents searched Appellant's laptop, tablet, and data obtained from Appellant's phone before or after Maj SM sent the notice of representation on 30 January 2017. However, the AFOSI copied the data on Appellant's phone on 27 January 2017, indisputably during the period of Appellant's consent, before returning the phone to Appellant. Unlike the phone itself, the copied data the AFOSI created belonged to the Government, not Appellant, and Appellant had no reasonable expectation of privacy in it with respect to the AFOSI. *See United States v. Lutcza*, 76 M.J. 698, 703 (A.F. Ct. Crim. App. 2017). Therefore, the AFOSI's right to search that data would have been unaffected by revocation of consent. The discovery of apparent child pornography on the data extracted from Appellant's phone led the agents to seek and obtain a search warrant for Appellant's residence, where additional media containing child pornography was located and seized, and to retain custody of the laptop and tablet pursuant to probable cause. Accordingly, we are not persuaded the outcome of the case would have been different had Maj SM included the revocation of consent in her initial notice of representation.

**D. Post-Trial and Appellate Delay**

Appellant's court-martial concluded on 15 February 2019. The convening authority took action 137 days later, on 2 July 2019. Appellant's case was docketed with this court on 16 July 2019. This court is issuing its opinion 18 months and 9 days after docketing.

"We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). The 137 days that elapsed between sentencing and action exceeded the 120-day threshold for a facially unreasonable post-trial delay the CAAF established in *Moreno*, 63 M.J. at 142. Similarly, the delay between docketing at this court and the issuance of this opinion exceeds *Moreno's* 18-month threshold for a facially unreasonable appellate delay. *Id*. Accordingly, we have considered the four factors the CAAF identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated by either delay: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id*. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)).

However, the CAAF has held that where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted). Where the appellant does not prevail on the substantive grounds of his appeal, as in this case, there is no oppressive incarceration. *Id*. at 139. Similarly, where an appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id*. at 140. With regard to anxiety and concern, "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id*. Appellant has made no showing of such particularized anxiety or concern with respect to either of the delays in question, and we perceive none.

Accordingly, we consider whether the delays in this case were so egregious as to adversely affect the public's perception of the military justice system. *Toohey*, 63 M.J. at 362. We conclude they were not.

With respect to the delay between Appellant's trial and the convening authority's action, the Government has provided a sworn declaration from Captain (Capt) ET, the chief of military justice at the wing legal office at Francis E. Warren AFB, who provided a rough timeline for the post-trial processing of Appellant's case.[10] The timeline, together with the court reporter chronologies,[11] indicate that although the initial draft of the transcript was completed and record of trial initially assembled by early April 2019, a further month elapsed before counsel completed their review of the transcript. In late May 2019, the record was sent from the wing legal office to the general court-martial convening authority's legal office—located on the same base—where "substantial errors" requiring correction were found in the transcript.[12] Ultimately, the staff judge advocate's recommendation (SJAR) and record were not served upon Appellant and trial defense counsel until mid-June 2019; the Defense timely submitted clemency matters to the convening authority on 27 June 2019; and the staff judge advocate signed the addendum to the SJAR on 1 July 2019, the day before convening authority action. We acknowledge the record was of substantial length, including to 1,067 pages of transcript and 12 total volumes, and that the wing legal office relied on court reporters stationed at other bases. Nevertheless, the post-trial process illustrated in the record is not a model of efficiency, and it is unclear why certain portions of the process—such as review by counsel—took as long as they did. Yet, in the absence of any particularized prejudice to Appellant, we find the delay was not so egregious as to impugn the fairness and integrity of the military justice system.

---

[10] *See Jessie*, 79 M.J. at 442–44 (permitting consideration of declarations from outside the record of trial necessary to resolve issues raised by materials in the record of trial).

[11] Neither Appellant nor the Government addressed whether these chronologies are part of the "record" as defined in R.C.M. 1103(b)(2) or are "matters attached to the record"—also referred to as "allied papers"—under R.C.M. 1103(b)(3). *See Jessie*, 79 M.J. at 440–41. We note Air Force Manual 51-203, *Records of Trial*, Atch. 2 ¶ 3 (4 Sep. 2018), calls for the inclusion of a court reporter chronology in the record of trial, and Air Force Instruction 51-201, *Administration of Military Justice*, ¶ A11.2.2 (18 Jan. 2019), requires the creation of a "chronology or similar documentation" and its inclusion in the record of trial "[i]f more than 120 days has elapsed between sentence and convening authority action." Appellant cites to the court reporter chronologies in his assignments of error, to which the Government has raised no objection. Accordingly, we consider these documents in our analysis. *Cf. United States v. Stanton*, ___ M.J. ___, No. 19-0449, 2021 CAAF LEXIS ___, at *___ n.2 (C.A.A.F. 13 Jan. 2021) (considering discharge request and action upon it without deciding whether they were part of the "entire record" because parties did not object).

[12] In this regard, we note that the early portion of the transcript, even in its final "corrected" version, contains numerous obvious errors.

With regard to appellate delay, we note this court has issued its opinion within 9 days of the 18-month *Moreno* standard. Appellant filed his initial assignments of error on 12 March 2020, after seeking and being granted five enlargements of time over the Government's opposition. The Government submitted its answer on 1 May 2020, after seeking to compel Maj SM's declaration to respond to Appellant's allegation of ineffective assistance and requesting one enlargement of time. Appellant submitted his reply brief on 8 May 2020. We again note the transcript and record of trial are large and include a significant amount of sealed material, including thousands of contraband photos and videos. In the absence of any particularized prejudice to Appellant, we find the delay did not violate Appellant's right to due process.

Finally, recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude no such relief is appropriate.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court